UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LONE STAR AMERICAS ACQUISITIONS, INC. :
and LSRMF3 AQ HOLDINGS TRUST,   :     Civil Action No.:  22-cv-08852-JGK
    :
               Plaintiffs,   :
    :
          vs.     :
    :
SUSA FINANCIAL, INC. d/b/a FIRSTFUNDING, :
INC.,   :
    :
           Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
(212) 237-1000
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iiII

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND ...........................................................2

ARGUMENT ........................................................................................................................5

POINT I ................................................................................................................................5

THIS ACTION MUST BE REMANDED TO STATE COURT, BECAUSE LONE
STAR AND FIRSTFUNDING ARE BOTH CITIZENS OF TEXAS AND THUS
COMPLETE DIVERSITY DOES NOT EXIST ...................................................................5

CONCLUSION......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC,*
   692 F.3d 42 (2d Cir. 2012) ..................................................................................5

*Benchmark Investments, Inc. v. PAVmed Inc.,*
   2021 WL 5967918 (S.D.N.Y. 2021) .....................................................................8

*Bounds v. Pine Belt Mental Health Care Res.,*
   593 F.3d 209 (2d Cir. 2010) ................................................................................5

*Charles v. Slade Industries, Inc.,*
   2019 WL 6768659 (E.D.N.Y. 2019) .................................................................7, 8

*Derrica v. Tura, Inc.,*
   2022 WL 1421452 (S.D.N.Y. 2022) .................................................................8, 9

*Doukas v. Ballard,*
   825 F. Supp.2d 377 (E.D.N.Y. 2011) .................................................................4

*In re Gen. Motors LLC Ignition Switch Litig.,*
   2015 WL 2130904 (S.D.N.Y. 2015) .....................................................................5

*Govias v. Tejada,*
   2010 WL 3528869 (S.D.N.Y. 2010) .....................................................................7

*Greystone Bank v. Tavarez,*
   2010 WL 3311835 (S.D.N.Y. 2010) .................................................................6, 7

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,*
   213 F.3d 48 (2d Cir. 2000) ................................................................................5

*Hertz Corp. v. Friend,*
   559 U.S. 77 (2010) .......................................................................................5, 6, 7

*ICON MW, LLC v. Hofmeister,*
   950 F.Supp.2d 544 (S.D.N.Y. 2013) ...................................................................5

*Mopaz Diamonds, Inc. v. Inst. of London Underwriters,*
   822 F.Supp. 1053 (S.D.N.Y. 1993) .....................................................................5

*Purdue Pharma L.P. v. Kentucky,*
   704 F.3d 208 (2d Cir. 2013) ................................................................................4

*St. Paul Fire & Marine Ins., Co. v. Scopia Windmill Fund, LP,*
  87 F.Supp.3d 605 (S.D.N.Y. 2015) ................................................................... 6

*In re Standard & Poor's Rating Agency Litig.,*
  23 F. Supp.3d 378 (S.D.N.Y. 2014) ............................................................... 4, 5

*Sty-Lite Co. v. Eminent Sportswear Inc.,*
  115 F.Supp.2d 394 (S.D.N.Y. 2000) ............................................................... 6

*Victor v. Holden,*
  2011 WL 446199 (S.D.N.Y. 2011) (Koeltl, J.) ............................................... 8

**Statutes**

28 U.S.C. §§ 1331 ............................................................................................. 4

28 U.S.C. § 1332 ............................................................................................... 5

28 U.S.C. § 1332(a) ....................................................................................... 2, 3

28 U.S.C. § 1332(c)(1) ..................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs Lone Star Americas Acquisitions, Inc. ("Lone Star") and LSRMF3 AQ Holdings Trust ("Trust") (collectively, "Plaintiffs") commenced this action in the Supreme Court, New York County interposing three State law claims against defendant SUSA Financial, Inc. d/b/a FirstFunding, Inc. ("FirstFunding"). The Complaint establishes that Lone Star's principal place of business is located in, appropriately enough, Texas. FirstFunding, which is incorporated in Texas, removed the action to this Court, claiming that this Court has diversity jurisdiction. According to FirstFunding's notice of removal, Lone Star's principal place of business is not in the Lone Star State, but is actually in New York. The *only* evidence cited in support of the claim is Lone Star's website. The notice of removal erroneously claims that the webpage states that Lone Star's principal place of business is located at its Manhattan offices. Actually, the webpage merely identifies various "Global Offices" for Lone Star and various related entities – there is no reference to a "principal place of business."

The fact that Lone Star has business operations in New York does not mean its "principal place of business" is located in New York. Rather, under the "nerve center" test, a corporation's principal place of business is located in the state where the corporation's top executives control, direct, and coordinate the corporation's activities. Here, seven (7) of Lone Star's nine (9) corporate officers and directors work from Texas; none work in New York. Lone Star's executives decide corporate policy and strategy from Texas. Lone Star's corporate documents also identify Texas as its location. The fact that Lone Star has an office and engages in business activities in New York, and advertises those New York-based services on its website, does not change its principal place of business.

Lone Star's principal place of business is in Texas, the State where FirstFunding is incorporated. Thus, both Lone Star and FirstFunding are citizens of Texas. This Court, therefore, cannot exercise diversity jurisdiction over this action, and thus must remand the case back to Supreme Court, New York County.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs commenced this action in Supreme Court, New York County on September 13, 2022. (Matthews Dec., Ex. A.) The Complaint alleges that FirstFunding entered into a contract to sell certain residential mortgage loans, with an aggregate unpaid balance of $107,074,693, to the Trust. (*Id.*, ¶ 1, ¶ 8-18.) After agreeing to sell the loans to the Trust, however, FirstFunding continued to surreptitiously market the loans to other potential buyers, and ultimately sold the loans to a third-party for, upon information and belief, a higher price. (*Id.*, ¶ 1, ¶ 24-37.) The Complaint asserts three State law claims against FirstFunding: (1) breach of contract (*Id.*, ¶ 42-47); (2) unjust enrichment (*Id.*, ¶ 48-52); (3) fraud (*Id.*, ¶ 53-60). The Complaint alleges damages in excess of $6,500,000, plus interest. (*Id.*, ¶ 47.)

With regard to the parties, the Complaint asserts that Lone Star was incorporated in Delaware and has a principal place of business in Texas. (*Id.*, ¶ 2.) The Complaint asserts that Lone Star also has an office in New York. (*Id.*) With regard to the Trust, the Complaint states that it "is a statutory trust organized and existing under the laws of the State of Delaware, with an address at U.S. Bank Corporate Trust Services, One Federal Street, 3rd Floor, Boston MA 02110, EX-MA, Attn: Global Structured Finance / LSRMF3 AQ Holdings Trust." (*Id.*, ¶ 3.) The Complaint alleges that FirstFunding is a Texas corporation. (*Id.*, ¶ 4.) Thus, according to the Complaint, complete diversity does not exist, as both Lone Star and FirstFunding are citizens of Texas.

On October 17, 2022, FirstFunding filed a Notice of Removal to remove this action from the Supreme Court, New York County to the United States District Court for the Southern District of New York. (Matthews Dec., Ex. B.)  The Notice of Removal alleges only one basis for this Court's jurisdiction: diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (*Id.*, ¶ 1, 6, 9, 10-19.) FirstFunding admits that it is incorporated in Texas, and also asserts that its principal place of business is California, concluding that, "for purposes of diversity, FirstFunding is a citizen of Texas and California." (*Id.*, ¶ 12.)  As to the Trust, FirstFunding alleges that, as a trust created under Delaware law with a trustee resident in the State, it is a citizen of Delaware. (*Id.*, ¶ 14.)

With respect to Lone Star, however, FirstFunding correctly asserts that it is incorporated in Delaware, but falsely alleges that Lone Star "has its principal place of business at 888 7th Avenue, 11th Floor, New York, New York 10019." (*Id.*, ¶ 13.)  FirstFunding bases this allegation on only one source, which it mischaracterizes.  FirstFunding cites to Lone Star's website, which FirstFunding asserts: "stat[es] Lone Star's principal place of business is located at 888 7th Avenue 11th Floor New York, New York 10019 . . .". (*Id.*, ¶ 13.)  Actually, the website merely lists various "Global Offices" of various affiliated entities, including Lone Star.  (Smith Dec., Ex. H.)  The webpage makes no assertion regarding Lone Star's "principal place of business." (*Id.*)  Further, the fact that Lone Star has an office in New York – a fact alleged in the Complaint (Matthews Dec., Ex. A, ¶ 2) – has no bearing on the location of Lone Star's legal "principal place of business."

Contrary to FirstFunding's unsupported allegations, Lone Star's principal place of business is located in Texas, not New York.  Lone star is ultimately governed by its Board of Directors, which consists for two directors: Faith McManus and Rebecca Smith.  Both directors work in Lone Star's Texas offices. (Smith Dec., ¶ 3, Ex. C.)  The Board of Directors adopted By-Laws for Lone Star.  (*Id.*, 5.)  Among the Board of Directors' responsibilities is to appoint Lone Star's corporate

officers and oversee their actions. (*Id.*, Ex. E.)  The Board of Directors makes high-level corporate governance decision, such as whether to merge with another entity. (*Id.*, ¶ 4, Ex. D.)

Lone Star has nine corporate officers – seven of whom work in Lone Star's Texas offices, one of whom works remotely from Montreal, and another who works remotely from Oklahoma. (*Id.*, ¶ 7-8, Ex. C.)  None of the corporate officers or directors work in New York. (*Id.*, ¶ 8.)

Lone Star's corporate filings, moreover, support a finding that its principal place of business is located in Texas.  For instance, on July 20, 2020, Lone Star filed a Certificate of Merger of Domestic Limited Partnership into a Domestic Corporation with the State of Delaware, which identified the place of business for the resulting corporation as "2711 N. Haskell Ave., Suite 1700, Dallas, TX 75204." (*Id.*, Ex. F.)  Lone Star's tax returns are also completed in Lone Star's Texas office, which lists the Texas office as Lone Star's address. (*Id.*, Ex. G.)  Finally, Lone Star's corporate books and records are maintained in Texas. (*Id.*, ¶ 11.)

While it is true that Lone Star has an office in New York, the executives and business officers in New York do not set corporate policy or strategy. (*Id.*, ¶ 12, 17.)  Rather, officers such as Jeffrey Kert (Senior Managing Direction, Origination), Chip Cammerer (Senior Managing Direction, Origination), and Bob Ricci (Senior Managing Director, Origination - Co-Head Americas Real Estate) manage and conduct certain of Lone Star's business operations. (*Id.*, ¶ 15.)  Lone Star also employs executives and business officers in other States, such as Florida and Texas, to oversee business operations. (*Id.*, ¶ 16.)

## ARGUMENT

### POINT I

### THIS ACTION MUST BE REMANDED TO STATE COURT, BECAUSE LONE STAR AND FIRSTFUNDING ARE BOTH CITIZENS OF TEXAS AND THUS COMPLETE DIVERSITY DOES NOT EXIST

### Diversity Jurisdiction, Generally

It is axiomatic that "federal courts are courts of limited jurisdiction" and thus "lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). "Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Doukas v. Ballard*, 825 F. Supp.2d 377, 380 (E.D.N.Y. 2011); *see also In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp.3d 378, 392 (S.D.N.Y. 2014) (similar); 28 U.S.C. §§ 1331 (general federal question jurisdiction), 1332 (diversity jurisdiction), and 1441(a) (removal statute). The removing party "bears the burden of establishing the existence of jurisdiction." *Standard & Poor's*, 23 F.Supp.3d at 393. Significantly, "federal courts construe the removal statute narrowly, resolving any doubts *against* removability." *Id.* at 392 (emphasis added; internal quotation marks omitted). "If a case is improperly removed, because original jurisdiction was lacking, the case must be remanded to the state court from which it was removed." *Mopaz Diamonds, Inc. v. Inst. of London Underwriters*, 822 F.Supp. 1053, 1055 (S.D.N.Y. 1993).

"To remove a case based on diversity jurisdiction, it is incumbent upon the diverse defendant to aver that all the requirements of diversity jurisdiction have been met." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010). "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Establishing diversity jurisdiction requires that "the amount in

controversy exceeds $75,000 and the parties are of diverse citizenship." *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 2130904, at *1 (S.D.N.Y. 2015); *see also* 28 U.S.C. § 1332 (diversity jurisdiction statute).  Thus, "diversity is lacking where any party to the action is a citizen of the same state as an opposing party." *ICON MW, LLC v. Hofmeister*, 950 F.Supp.2d 544, 545 (S.D.N.Y. 2013); *see also Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.'").

"For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012); *see also* 28 U.S.C. § 1332(c)(1) (stating same).  Thus, 28 U.S.C. § 1332 "establishes a theory of dual citizenship for corporations and if either the corporation's place of incorporation or principal place of business destroys diversity, then the courts will not have diversity jurisdiction." *Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F.Supp.2d 394, 398 (S.D.N.Y. 2000).

In this case, no diversity exists because Lone Star is a citizen of Texas, where it has its principal place of business, and FirstFunding is admittedly a citizen of Texas, its state of incorporation.

**<u>Principal Place of Business</u>**

In *Hertz Corp. v. Friend*, *supra*, the United States Supreme Court adopted the "nerve center" test to determine a corporation's principal place of business for purposes of diversity jurisdiction.  Pursuant to the "nerve center" test, a corporation's principle place of business "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 80.  A corporation's "nerve center," according to the Supreme

Court, "should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not just simply an office where the corporation holds its board meetings." *Id.* at 93. The "nerve center" test "focuses on where a corporation's 'high-level' decisions are made, not where day-to-day activities are managed." *St. Paul Fire & Marine Ins., Co. v. Scopia Windmill Fund, LP*, 87 F.Supp.3d 605 (S.D.N.Y. 2015).

In adopting the "nerve center" test, the Supreme Court explicitly rejected a test focused on a corporation's general business activities that looks "not at a particular place within a State but incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are 'significantly larger' than in the next-ranking State." *Hertz*, 559 U.S. at 93; *Greystone Bank v. Tavarez*, 2010 WL 3311835, \*1 (S.D.N.Y. 2010) ("The State in which the corporation has its most extensive contacts or business dealings or the greatest impact to the public is irrelevant to this determination.").

### Lone Star's Principal Place of Business is in Texas Because That is Where its "Nerve Center" is Located

The accompanying Smith Declaration establishes that Lone Star's "nerve center," and therefore its principal place of business, is located in Texas. *See Charles v. Slade Industries, Inc.*, 2019 WL 6768659, \*1 (E.D.N.Y. 2019) ("a corporate officer's sworn statement [is] sufficient proof of a corporation's principal place of business."). As set forth in the Smith Declaration, Lone Star is governed by a Board of Directors – both of whom work from Lone Star's Texas offices. (Smith Dec., ¶ 3, Ex. C.) The Board of Directors sets the company's By-Laws (*Id.*, ¶ 5), decides high level matters such as whether to merge with another entity (*Id.*, ¶ 4, Ex. D), and appoints and oversees the company's corporate officers. (*Id.*, ¶ 6, Ex. E.)

The Board of Directors has appointed nine (9) corporate officers, seven (7) of whom work from Lone Star's Texas offices.  (*Id.*, ⁋ 7-8, Ex. C.)  The two (2) corporate officers who do not work in Texas work remotely from Montreal and Oklahoma.  (*Id.*, ⁋ 8.)  None of the company's corporate officers or directors work in New York.  (*Id.*)

Lone Star's corporate filings and tax returns also establish that its principal place of business is located in Texas.  (Smith Dec., Ex. F, G.) *See Govias v. Tejada*, 2010 WL 3528869, *1-2 (S.D.N.Y. 2010) (accepting corporate filings identifying principal place of business as competent proof of location of principal place of business).

Accordingly, the Smith Declaration establishes that "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *Hertz Corp.*, 559 U.S. at 80, is located in Texas. *See, e.g., Greystone Bank*, 2010 WL 3311835, *1-2 (holding that declaration of plaintiff's Vice President, stating locations of top officers' offices and where top decisions were made, along with corporate documents establishing principal place of business, established that "nerve center" located in North Carolina); *Charles*, 2019 WL 6768659, *1-2 (holding principal place of business is in New Jersey based on president's declaration stating that is where corporate headquarters is located, decisions are made, and books and records maintained, despite perhaps conducting more business in New York); *Benchmark Investments, Inc. v. PAVmed Inc.*, 2021 WL 5967918, * 3 (S.D.N.Y. 2021) (relying on declaration stating most officers work in New York to determine that State as principal place of business).

FirstFunding contends that Lone Star's principal place of business is located in New York based on the fact that Lone Star's website states it has an office in New York. (Mathews Dec., Ex.

B.)[1]   However, "[w]hether a corporation has offices or does business in any given state is not controlling for this analysis." *Victor v. Holden*, 2011 WL 446199, *1 (S.D.N.Y. 2011) (Koeltl, J.) Furthermore, the fact that a corporation's website advertises its offices are located in a particular State does not render that State its "principal place of business." *Charles*, 2019 WL 6768659, *2 (holding New Jersey is principal place of business, despite fact that website features New York office prominently).   Obviously, a company will advertise to its potential customers and vendors where the business operations are located, not where corporate strategy is made.

The recent case, *Derrica v. Tura, Inc.*, 2022 WL 1421452 (S.D.N.Y. 2022) is instructive. In *Derrica*, the plaintiff moved to remand, contending that defendant's principal place of business is located in New York, the State of which plaintiff is a citizen. *Id.* *1.   Specifically, plaintiff pointed to defendant's "promotional materials and public statements where it states that the company is 'based in Manhattan.'" *Id.* at *2.   The Court disagreed, holding that "the determination of a company's nerve center is ultimately based on where the company's activities are actually 'direct[ed], control[led], and coordinate[d]', now how the company advertises itself." *Id.* (internal citation omitted).   Further, the Court rejected the argument that "the bulk of [defendant's] business activities visible to the public [took] place in [New York]", as that does not indicate the location from which those activities are directed by top officers. *Id.*   Instead, the Court reviewed defendant's decision-making structure.   According to the Court, defendant had two (2) corporate officers.   One of the officers worked from his home in Connecticut, occasionally working from the company's New York office, while the other officer worked exclusively in Pennsylvania, "where he directly supervise[d] the managers of each of [defendant's] operations, finance, and administrative

---

[1] As noted above, the Notice of Removal inaccurately states that Lone Star's website identifies the New York office as its principal place of business.   Actually, the webpage lists "Global Offices" for various affiliated entities, not those entities' principal place of business.   (Smith Dec., Ex. H.)

departments, all of whom, as well as their respective departments, [were] located in [Pennsylvania]." *Id.* Accordingly, the Court held that defendant's principal place of business was located in Pennsylvania, not New York. *Id.*

Here, the vast majority of Lone Star's corporate officers and directors work in Texas, where they direct, control, and coordinate Lone Star's activities. (Smith Dec., ¶ 3, 7-8.) None of these corporate officers or directors work in New York. (*Id.*, ¶ 3, 8.) The fact that some of Lone Star's business activities occur in New York has no bearing on where its "nerve center" is located.

Accordingly, the Court should find that Lone Star's principal place of business is located in Texas, that because both Lone Star and FirstFunding are citizens of Texas there is no diversity among the parties, and remand the case to the Supreme Court, New York County, as this Court does not have subject matter jurisdiction over this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion in its entirety, along such other and further relief in Defendants' favor as is just and appropriate under the circumstances.

Dated: November 15, 2022
New York, New York

**WINDELS MARX LANE & MITTENDORF, LLP**

By: _____
Scott R. Matthews
James Tracy
156 West 56th Street
New York, NY 10019
*Attorneys for Defendants*

## ATTORNEY CERTIFICATION OF COMPLIANCE

Pursuant to Section I(D) of the Individual Practices Judge John G. Koeltl, the undersigned filing attorney hereby certifies, relying upon the word count of the word-processing system used to prepare this document, that the Memorandum of Law in Support of Plaintiffs' Motion to Remand, dated November 15, 2022, exclusive of the cover page, table of contents, table of authorities, and certificate of compliance contains: **3,035 words.**

Executed on November 15, 2022.

Scott R. Matthews